## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| EDDIE LEE JACKSON, #01069649, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-0647 |
| | § | |
| DEBRA GARZA, *ET AL.*, | § | |
| | § | |
| *Defendants.* | § | |

### MEMORANDUM OPINION AND ORDER

Plaintiff, a state inmate proceeding *pro se* and *in forma pauperis*, filed this section

1983 lawsuit against University of Texas Medical Branch ("UTMB") employees nurse

Debra Garza, physician Dr. Betty J. Williams, physician assistant Toni Deer, practice

manager Brooke Davis, and nurse manager Angela Cooling (collectively the

"Defendants"). He claims that the defendants violated his constitutional rights at the Texas

Department of Criminal Justice ("TDCJ") Ellis Unit. Pursuant to the Court's order, the

Attorney General's Office submitted a *Martinez* report (Docket Entry No. 28).[1] Plaintiff

filed an unsworn one-page response to the report. (Docket Entry No. 30.)

Having reviewed the complaint, the *Martinez* report, the response, and the

applicable law, the Court DISMISSES this lawsuit for failure to state a viable section 1983

claim, as follows.

---

[1]*Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). The report in this case encompasses over 380 pages of medical, administrative, and grievance records. The report has been filed under seal to protect plaintiff's confidential medical information.

## Background and Claims

Plaintiff alleges that, on January 10, 2016, defendant Garza administered carbamide peroxide drops in his left ear for earwax removal. He states that the drops "exploded" in his ear, rupturing his eardrum and causing a hearing loss. (Docket Entry No. 1, p. 3.) Plaintiff claims that defendant Williams then failed to order proper treatment for the perforation and hearing loss, and refused to give him anti-embolism stockings and dry skin lotion to address his other medical complaints. Plaintiff further asserts that defendant Deer prescribed him harmful anti-edema medication, and that she was generally indifferent to the pain and suffering caused by swelling in his legs. He claims that defendant Davis unlawfully charged him for medical copayments, and that defendant Cooling failed to discipline Ellis Unit nurses and allowed them to "run out of control." *Id.*

Plaintiff seeks $80 million in compensatory damages, $10 million in punitive damages, $10 million as monetary gifts to his prison friends and family, and installation of toilets in the Ellis Unit chapel and day rooms. *Id.*, p. 5.

## Standards of Review

### Sections 1915, 1915A

Because plaintiff is an inmate suing governmental officers or employees and is proceeding *in forma pauperis*, the Court is required by federal law to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §§

1915(e)(2)(B); 1915A(b); *see also* 42 U.S.C. § 1997e(c) (providing that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief"). A *Martinez* report submitted by state officials, as was done in this case, is a tool to assist courts in making a determination of frivolity under 28 U.S.C. § 1915. *See Norton v. Dimazana*, 122 F.3d 286, 292–93 (5th Cir. 1997); *see also Cay v. Estelle*, 789 F.2d 318, 323 & n.4 (5th Cir. 1986) (discussing the utility of a *Martinez* report).

In reviewing the pleadings, the Court is mindful of the fact that plaintiff in this case proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded," must be held to less stringent standards than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even under this lenient standard a *pro se* plaintiff must allege more than labels and conclusions or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Even a liberally construed *pro se* complaint must set forth facts giving rise to a claim on which relief may be granted. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993).

To determine whether a prisoner's *pro se* complaint fails to state a claim upon which relief may be granted, courts engage in the same analysis as when ruling on a

motion to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b)(6). *Hale v. King*, 642 F.3d 492, 497–99 (5th Cir. 2011).

### Rule 12(b)(6)

In reviewing a pleading under FRCP 12(b)(6), the court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 701 (5th Cir. 2017). However, only facts are entitled to an assumption of truth; legal conclusions unsupported by factual allegations do not suffice. *Iqbal*, 556 U.S. at 678–79 (2009). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

While federal pleading rules do not require detailed factual allegations, the rules do "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A complaint which provides only naked assertions that are devoid of further factual enhancement will not suffice. *Id.* Moreover, medical records appearing in a *Martinez* report may be utilized to rebut a prisoner's claims of deliberate indifference. *See McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir. 1990) (upholding the dismissal of a deliberate indifference claim where extensive medical records documented that the prisoner was not denied medical attention).

*Analysis*

### Eleventh Amendment Immunity

The defendants in this case are sued for monetary damages as to actions taken during their employment with UTMB and/or TDCJ, which are state agencies. The Eleventh Amendment bars a section 1983 suit for money damages against state agencies or their employees acting in their official capacity. *See Lewis v. UTMB*, 665 F.3d 625, 630 (5th Cir. 2011); *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998).

Thus, to the extent plaintiff seeks monetary damages against the defendants in their official capacities, his claims are barred by the Eleventh Amendment and are DISMISSED WITH PREJUDICE.

### Negligence

To any extent plaintiff claims that the defendants were negligent in their care, he fails to raise a viable claim for which relief may be granted under section 1983. *See Gibbs v. Grimmette*, 254 F.3d 545, 549–550 (5th Cir. 2001). Allegations of negligence and medical malpractice will not suffice to demonstrate an Eighth Amendment violation. *Id.*

Plaintiff's claims against the defendants for negligence and/or medical malpractice are DISMISSED WITH PREJUDICE for failure to state a viable claim under section 1983.

### Respondeat Superior

Plaintiff claims that defendant Cooling is liable under a theory of *respondeat superior* because Cooling was in charge of the nursing staff. He complains that the nurses

5

were "rude and smart-mouthed," and that his dry skin lotions "came up missing" many times.  (Docket Entry No. 1, p. 3.)

Plaintiff's claim against Cooling has no support in the law.  There is no vicarious or *respondeat superior* liability for supervisors under section 1983.  *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006); *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999) ("Only the direct acts or omissions of government officials . . . will give rise to individual liability under § 1983.").  Moreover, plaintiff's complaints that the nurses were rude and smart-mouthed, or that his skin lotions "came up missing," do not rise to the level of a constitutional issue.  Plaintiff's claim against Cooling premised on *respondeat superior* is DISMISSED WITH PREJUDICE for failure to state a viable claim under section 1983.

### Supervisory Liability

Plaintiff further claims that Cooling failed to keep the nursing staff "under control." To prevail on a supervisory liability claim against Cooling, plaintiff must show that Cooling, as a supervisory official, acted, or failed to act, with deliberate indifference to violations of his constitutional rights committed by subordinates.  *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).  A supervisory official may be held liable under section 1983 only if she (1) affirmatively participated in the acts that caused the constitutional deprivation, or (2) implemented unconstitutional policies that causally resulted in the constitutional deprivation.  *Id*.  That is, plaintiff must plead factual allegations showing that Cooling "implement[ed] a policy so deficient that the policy itself [was] a repudiation of

6

constitutional rights and [was] the moving force of the constitutional violation." *Cozzo v. Tangipahoa Parish Council – President Government*, 279 F.3d 273, 289 (5th Cir. 2002).

Plaintiff pleads no such factual allegations. To the extent plaintiff asserts claims against Cooling under a theory of supervisory liability, his claims are DISMISSED WITH PREJUDICE for failure to state a viable claim under section 1983.

### Deliberate Indifference

As a state inmate, plaintiff had a clearly established Eighth Amendment right not to be denied, by deliberate indifference, care for health, safety, and serious medical needs. *See Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). Prison officials violate the Eighth Amendment prohibition against cruel and unusual punishment when they evince deliberate indifference to a prisoner's health, safety, and serious medical needs, resulting in the unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Deliberate indifference raises a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105–07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989).

In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court held that a prison official cannot be found liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health, safety, or serious medical needs; that is, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Id.*

7

at 837. The Eighth Amendment deliberate indifference standard is an "extremely high" one to meet. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "Actions and decisions by officials that are merely inept, erroneous, ineffective or negligent" do not amount to deliberate indifference. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998).

It is indisputable that an incorrect diagnosis by a physician will not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Nor is the failure to alleviate a significant risk that medical personnel should have perceived, but did not, sufficient to demonstrate deliberate indifference. *Farmer*, 511 U.S. at 838. Rather, a showing of deliberate indifference requires a prisoner to establish that medical or prison personnel "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert*, 463 F.3d at 346 (internal quotation marks omitted). Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

Plaintiff claims that the defendants were deliberately indifferent to his health and serious medical needs in the following particulars.

### Eardrops, Hearing Loss

Plaintiff asserts that defendant Garza was deliberately indifferent to his health and serious medical needs by instilling eardrops into his left ear that caused the eardrum to

rupture.  Plaintiff's medical records as submitted in the *Martinez* report show that on January 8, 2016, plaintiff had complained of dried earwax in his ear canal and requested eardrops for its removal.  (Docket Entry No. 28, Exhibit A, at 00261.)  Medical staff examined his ears, and determined that he had impacted cerumen (ear wax).  *Id.*, at 00203–08.  The written treatment protocol for impacted cerumen specifically provided that, "If patient has impacted cerumen . . . tilt the patient's head to a 45 degree angle and place 5-10 drops of Carbamide Peroxide into ear."  *Id.*, at 00207.  In compliance with the protocol, Garza administered carbamide peroxide drops into plaintiff's ears on January 8, 2016.  *Id.*, at 00346.  The medical chart entry noted that "Ear drops instilled [both] ears, [patient] tolerated well.  No complaints or concerns expressed at this time."  *Id.*

Plaintiff was seen in clinic two days later, on January 10, 2016, complaining of burning and redness in his right ear.  *Id.*, at 00345.  The ear was cleaned and no additional eardrops were administered.  The Court notes that a different record charted it as his *left* ear.  *Id.*, at 00051.  Plaintiff was examined next day by defendant Williams, who observed left otitis externa with an intact eardrum.  *Id.*  That is, plaintiff had an outer ear infection and his eardrum was not ruptured.[2]  Williams prescribed antibiotic ear drops and anti-inflammatory medications.  *Id.*  On January 13, 2016, plaintiff was again seen in clinic. He was examined by a nurse practitioner, who observed a non-draining ruptured eardrum in plaintiff's left ear.  *Id.*, at 00196–97.

---

[2]*See* Docket Entry No. 28-3, p. 17 ("The provider noted you have left otitis externa with the TM (Tympanic Membrane) intact.  This means you had an infection to the outer ear with the ear drum intact.")

On January 26, 2016, plaintiff requested an x-ray for his ear drum and a referral to an ear specialist. He was seen in clinic that day, and his chart entry reads as follows:

> Inmate had a left OM and the canal was obstructed and the ear was lavaged and after a preformation to the [eardrum] was observed. Inmate was advised that a [perforated eardrum] is a common result with OM and that it was not related to the ear lavage which has no high pressure and there is no way for it to lacerate the eardrum . . . . Inmate was advised that [perforated eardrums] usually resolve on their own. He has been treated with [antibiotics], finishing only 2 days ago and that there is no indication for referral.

> \*    \*    \*    \*

> No perforation was visualized by this provider today, only a resolving OM with slight streaky erythema across the left side of the TM with some associated retraction.

> Assessment: No need for ENT [Ear-Nose-Throat physician] referral. Recheck ears in 3 weeks.

*Id.*, at 00004–05.

On February 16, 2016, defendants requested an expedited referral to a UTMB ENT for evaluation of plaintiff's ear and hearing loss complaints. *Id.* at 00319–20. In the interim, plaintiff continued receiving medications and medical care at the Ellis Unit. *Id.* at 00041, 00043–44. The expedited referral was approved, and plaintiff's appointment with the ENT was scheduled for March 18, 2016. However, on the morning of the scheduled appointment, plaintiff refused to attend "because he felt his [blood pressure] was

high and [he] wasn't feeling well." *Id.*, at 00023, 00184. A few days later, plaintiff was medically transferred to the Polunsky Unit, where he currently remains. *Id.*, at 00235.[3]

Plaintiff's medical records show that, from January 8, 2016, through the date of his transfer to the Polunsky Unit, the defendants saw and treated plaintiff several times for his ear complaints. Contrary to plaintiff's personal opinion, the medical records indicate that the eardrum perforation was related to his ear infection, not to the ear drops or ear wash. Plaintiff was provided antibiotic drops and anti-inflammatory medications for his ear infection, and was advised that perforated eardrums usually resolve on their own. When the eardrum perforation and hearing loss persisted, plaintiff was given an expedited referral to a UTMB ENT. The medical records do not show that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert*, 463 F.3d at 346 (internal quotation marks omitted); *see also Norton*, 122 F.3d at 292 (holding that inmate did not state a claim for deliberate indifference because "[t]he medical records indicate that [plaintiff] was afforded extensive medical care by prison officials, who treated him at least once a month for several years, prescribed medicine, gave him medical supplies, and changed his work status to reflect the seriousness of his problem.").

_____

[3]This lawsuit does not involve plaintiff's medical care at the Polunsky Unit. Medical records from the Polunsky Unit appearing in the *Martinez* report have been utilized only as background information. The Court advised plaintiff that any claims arising at the Polunsky Unit would need to be pursued in a separate lawsuit filed in a court of proper jurisdiction. (Docket Entry No. 15.)

Further, plaintiff's records are replete with instances of his demands for specific treatments, medications, and specialists, as well as with medical providers' investigations of and disagreements with his self-diagnosed medical conditions of diabetes, gout, "clogged arteries," "stage 1 dementia," use of "experimental drugs," and "poisoning." *See, e.g., id.*, at 00240, 00242–44, 00251, 00254, 00257, 00264, 00266–67. Plaintiff received on-going medical care and treatment as deemed appropriate by his medical providers.

Plaintiff's disagreement with the type and level of medical care he received does not rise to the level of deliberate indifference. *See Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1991) (holding inmate's disagreement with his medical treatment was insufficient to show Eighth Amendment violation); *see also Gibbs,* 254 F.3d at 549. His factual allegations fail to support the conclusion that defendants were actually aware of a risk and consciously disregarded it in administering the ear drops, in their treatment of his ear infection, ruptured eardrum, and hearing loss, or in not referring him to an ENT at an earlier point in time. Even if a lapse in professional judgment occurred, any such failure amounts to negligence or malpractice, and does not give rise to a constitutional violation. *See Harris v. Hegman*, 198 F.3d 153, 159 (5th Cir. 1999).

Plaintiff's claims of deliberate indifference to his ear complaints are unsupported by factual allegations sufficient to raise a viable claim, and are refuted by the medical records. The claims are DISMISSED WITH PREJUDICE for failure to raise a viable claim for which relief may be granted under section 1983.

*Edema, TED Hose, Medical Boots*

Plaintiff asserts that the defendants refused to provide him with TED hose (antiembolic stockings) for the swelling and edema on his legs. He further claims that defendants refused to prescribe medical boots to help with the swelling, that they ignored his edema, and that they gave him medications that worsened the condition. Plaintiff asserts that these actions or failures to act show deliberate indifference to his serious medical needs.

The medical records refute these claims of deliberate indifference. Plaintiff was offered or supplied TED hose several times, and was charted in the records as declining them, refusing to wear them, flushing them down the toilet, and/or reporting them as stolen. (Docket Entry No. 28, Exhibit A at 00006, 00026, 00031, 00044, 00049, 00050, 00053–55, 00194, 00214, 00222, 00326.) The records do not indicate that the defendants refused to provide him TED hose.

Nor do the records demonstrate deliberate indifference to health, safety, or serious medical needs regarding medical boots. The defendants initiated a referral request to the Estelle Unit Brace and Limb Clinic on December 30, 2015, for an evaluation of plaintiff's need for medical boots. *Id.*, at 00053–54, 00326. However, the referral was declined because plaintiff did not meet the necessary criteria. *Id.*, at 00242. On March 9, 2016, defendant Williams determined that plaintiff was at risk for falling due to impaired mobility and requested his transfer to a single-level facility with 24-hour access to nursing

care. *Id.*, at 00044. Plaintiff was transferred to the Polunsky Unit on or about March 21, 2016, where he renewed his requests for medical boots. *Id.*, at 00171.

The medical records further show that plaintiff was examined and treated numerous times by defendants for his complaints of edema and/or swelling in his legs. As discussed above, he was given TED hose to wear to help control swelling, but he refused or failed to wear them as ordered. It was plaintiff's personal opinion that he needed medical boots instead, and that he qualified for medical boots. *Id.*, at 00326. As stated earlier, plaintiff's disagreement with the type and level of medical care he received does not rise to the level of deliberate indifference. *See Varnado,* 920 F.2d at 321; *see also Gibbs*, 254 F.3d at 549.

Moreover, plaintiff was provided medications aimed at helping control his leg edema. He complained that one of the anti-edema medications made him "pass out," as shown by the following entry in his medical chart dated February 17, 2016:

> Inmate here [complaining of] passing out. He states that he "passes out" while in day room or in house for [approximately] 1 [minute]. He states that the aldactone [medication] is causing this issue. Inmate states that he read on the label that this medication can cause drowsiness. *He denies losing consciousness*, dizziness, chest pain, or shortness of breath. Denies any injury or injury to himself or others. Advised inmate that this medication is needed for fluid retention but if it is causing problems or undesired side effects it can be stopped and different medication can be given. *Inmate states that he will continue the medication.*

*Id.*, at 00003 (emphasis added). Plaintiff's medical records also show that, on January 26, 2016, he was seen in clinic with complaints of "severe swelling of legs." *Id.*, at 00005. Physical examination revealed no swelling. Plaintiff requested referral to a "vein

14

specialist," but was told there were no medical indications for a referral. He was instructed to wear his TED hose, which he was not wearing, but plaintiff insisted he "want[ed] treatment." Medical providers responded that his medication spironalactone (aldactone) was treatment. *Id.*

The medical records and related documents refute plaintiff's claims that the defendants refused his requests for TED hose, ignored his complaints of leg swelling, and were deliberately indifferent to his medical needs regarding TED hose, edema treatment, medical boots, and referrals for numerous medical specialists.

The medical records do not show that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert,* 463 F.3d at 346 (internal quotation marks omitted). To the contrary, the records show that plaintiff's complaints regarding edema, TED hose, and a need for medical boots were examined and, where deemed appropriate, treated. That plaintiff did not receive the level or type of medical care or treatment he himself deemed appropriate does not constitute an Eighth Amendment violation. A decision regarding whether to provide additional or different treatment "is a classic example of a matter for medical judgment." *Domino,* 239 F.3d at 756. Moreover, plaintiff's complaints of being denied referrals to certain specialists is a disagreement with the level and type of medical care he received, and raises no viable Eighth Amendment claim.

No deliberate indifference appears in plaintiff's medical records, nor do his factual allegations give rise to a viable Eighth Amendment claim under section 1983. His claims regarding leg edema, TED hose, medical boots, and specialists are DISMISSED WITH PREJUDICE for failure to raise a viable claim for which relief may be granted under section 1983.

*Dry Skin Lotion*

Plaintiff next complains that the defendants refused to prescribe him a certain medical lotion to help with his dry skin and "circulation issues." (Docket Entry No. 1, pp. 3–4.) Medical records submitted in the *Martinez* report show that, on December 16, 2015, plaintiff presented in clinic with complaints of dryness and a rash on his "privates." (Docket No. 28, Exhibit A at 00055.) Physical examination revealed no dermatitis, discharge, or discoloration, and no medical necessity was found for a prescription lotion or cream. *Id.*

Plaintiff's medical records further show that, on January 26, 2016, he requested a "big bottle of Lubriderm" for dry skin. *Id.*, at 00005. Medical staff advised him that dry skin was a comfort issue, not a medical issue, and that a prescription lotion was not indicated. *Id.* He was seen in clinic on March 3, 2016, requesting a lotion, and was informed once again that dry skin did not warrant prescription medication. *Id.*, at 00044. On March 31, 2016, he presented in clinic and was once more informed that he had no medical need for the requested lotion. *Id.*, at 00178. On April 2, 2016, he was noted to have dermatitis, and was prescribed a medical lotion for ninety days. *Id.*, at 00038–39.

The medical records show that plaintiff was denied medical lotion when there was no objective need for it, but was provided the lotion when such need was indicated. The medical records do not show that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert*, 463 F.3d at 346 (internal quotation marks omitted). To the contrary, the records show that plaintiff's repeated requests for a medical lotion were investigated by medical staff who examined him and evaluated his condition. That plaintiff disagreed with the defendants' medical and professional judgments or the type of care he received does not constitute or evince deliberate indifference. *See Varnado*, 920 F.2d at 321 (holding inmate's disagreement with his medical treatment was insufficient to show Eighth Amendment violation); *see also Gibbs*, 254 F.3d at 549.

Plaintiff's factual allegations fail to raise a viable claim for deliberate indifference under section 1983 as to his requests for a medical lotion, and his claim is DISMISSED WITH PREJUDICE.

### *Collection of Co-Pay*

In 2011, the Texas Legislature amended Texas Government Code § 501.063 to institute a $100.00 health services fee when an inmate "initiates a visit to a health care provider." TEX. GOV'T CODE § 501.063(a) (1) (2011). Plaintiff claims that because he has chronic illnesses that require follow-up medical appointments, defendant Davis illegally

charged him for medical co-payments and was "indifferent to his suffering." Plaintiff does not claim that he was denied medical care based on any inability to pay.

The Fifth Circuit Court of Appeals has held that the requirement for inmates to pay the medical co-payment, even if the inmate suffers from a chronic condition, is not unconstitutional. *Morris v. Livingston*, 739 F.3d 740 (5th Cir. 2014). Thus, plaintiff fails to state a cognizable claim for relief under section 1983 against defendant Davis, and the claim is DISMISSED WITH PREJUDICE.

### *Retaliation*

In his response to the *Martinez* report, plaintiff argues that the defendants' actions against him were retaliatory. He asserts that the Ellis Unit defendants retaliated against him because he had participated in a 2009 investigation of a prison guard's illicit relationship with an inmate at the Huntsville Unit. (Docket Entry No. 30.)[4] Plaintiff does not disclose the nature of his participation in the investigation, nor does he state factual allegations sufficient to raise a viable claim for retaliation. Moreover, his response was not filed under penalty of perjury.

To raise a viable claim for retaliation, plaintiff must allege more than his personal belief that he was the victim of retaliation. *Jones*, 188 F.3d at 324–25. "To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of

---

[4]Plaintiff filed an unsuccessful earlier lawsuit claiming retaliation for his participation in the 2009 investigation. *See Jackson v. Smith*, C.A. No. H-13-2321 (S.D. Tex. Aug. 19, 2013).

that right, (3) a retaliatory adverse act, and (4) causation." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008). As to the fourth element, an inmate may prove causation by alleging "a chronology of events from which retaliation may plausibly be inferred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995) (citation and quotation marks omitted).

Plaintiff's participation in a 2009 investigation of a prison guard at the Huntsville Unit, and his complaints of inadequate medical care in 2015–16 at the Ellis Unit, do not constitute a chronology of events from which retaliation may plausibly be inferred. Plaintiff's factual allegations in this case are insufficient to allow a plausible inference of causation. Nor does he allege facts sufficiently showing that "but for" a retaliatory intent, the alleged retaliatory acts would not have occurred. *Id.*

Plaintiff's claim for retaliation premised on the defendants' alleged belief that he was a "snitch" at a previous prison unit is conclusory and DISMISSED WITH PREJUDICE for failure to state a viable claim for which relief may be granted under section 1983.

### *Dismissal with Prejudice*

The Court is of the opinion that plaintiff has pleaded his best case against the defendants and that his claims should be dismissed with prejudice. *See Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999) (citing with approval the proposition that a district court does not err in dismissing a complaint with prejudice if the court determines plaintiff has alleged his best case).

The *Martinez* report establishes that plaintiff received regular and continuous medical care, examinations, and treatment for his numerous and various complaints. At no point do the records show that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert*, 463 F.3d at 346. Indeed, after his numerous complaints to medical staff regarding his ear problems and his demands to be seen by an ear specialist, he subsequently refused the expedited appointment with an ENT defendants had obtained for him. The records further show that, when medical staff refused his demands for a vein specialist, a heart specialist, an ear specialist, and other treatment deemed unnecessary by medical staff, security staff had to remove him from the clinic. (Docket Entry No. 28, Exhibit A at 00005.) The medical record noted that plaintiff had been "constantly arguing" with medical staff's decisions during the encounter. *Id.*

The Eighth Amendment does not grant plaintiff a constitutional right to demand and obtain medical care convenient to his schedule or according to his preferences. The courts have clearly stated that prisons are not required to provide medical treatment that is "the best that money could buy." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2018). Plaintiff's generalized claims of deliberate indifference to his health, safety, and serious medical needs are unsupported in the medical records as were provided to this Court. Similarly, plaintiff's claim that the defendants' complained-of conduct was in retaliation

for his participation in an earlier investigation at a different unit is conclusory, speculative and unsupported by factual allegations sufficient to state a viable claim under section 1983.

For these reasons, the claims raised in this lawsuit are dismissed with prejudice and without leave to amend.

### State Law Claims

To any extent plaintiff raises claims for negligence, gross negligence, and/or medical malpractice, the claims constitute state law claims that are not cognizable for purposes of section 1983. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental or pendant jurisdiction over a state law claim when it has dismissed all claims over which it has original jurisdiction. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also Enochs v. Lampasas County*, 641 F.3d 155, 161 (5th Cir. 2011) (explaining that the rule in the Fifth Circuit "is to dismiss state claims when the federal claims to which they are pendent are dismissed").

Because the Court is dismissing all of plaintiff's federal claims, it declines to exercise supplemental or pendant jurisdiction over any state law claims raised by plaintiff.

### Conclusion

Plaintiff's lawsuit is DISMISSED WITH PREJUDICE for failure to state a viable claim for which relief can be granted under section 1983. Any and all pending motions are DISMISSED AS MOOT.

This dismissal constitutes a "strike" for purposes of section 1915(g). Plaintiff has at least one prior "strike" for purposes of section 1915(g). *See Jackson v. Smith*, C.A.

No. H-13-2321 (S.D. Tex. Aug. 19, 2013) (dismissed for failure to state a claim). Should plaintiff receive one more "strike" by a federal district court or court of appeals, he will be barred from proceeding *in forma pauperis* pursuant to the provisions of section 1915(g).

The Clerk is to provide a copy of this order to plaintiff; to the TDCJ–Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711; and to the Clerk of the United States District Court for the Southern District of Texas, Houston Division, 515 Rusk Street, Houston, Texas, 77002, Attention: Three-Strikes List Manager, at the following email: Three_Strikes@txs.uscourts.gov.

Signed at Houston, Texas on March 12, 2019.

Gray H. Miller
Senior United States District Judge